packaging those pharmaceutical drugs and causing them to be shipped to consumers in the United States and elsewhere.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that:

38.     Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA used e-mail and various internet bulletin boards and chat rooms to offer the services of the Bansal organization to supply controlled substance pharmaceutical drugs to fulfill orders placed by consumers in the United States and elsewhere, principally via internet pharmacy websites.  No prescriptions or consultations with physicians were required to fulfill any orders placed by these customers.

39.     Defendant BRIJ BHUSHAN BANSAL procured controlled substance pharmaceutical drugs from suppliers in India which had not been approved by the United States government, which he then exported to the United States and elsewhere.

40.     Operators of internet pharmacy websites, defendants JITENDRA ARORA, FRED MULLINIX, VICTOR DEVORE, MATTHEW JOSEPH MELAO, CHRISTOPHER GEOFF LAINE, KEVIN ATKINSON,  Rohn Wallace (charged elsewhere in this indictment), and Corrina Mehrer and Klaus Rieder (who are charged elsewhere), collectively referred to as the "website operators; " operated internet website facilities, and entered into agreements with others operating such websites, offering controlled substance pharmaceutical drugs for sale to consumers without a prescription as required by law.  Some of the controlled substance pharmaceutical drugs offered on these websites were (1) morphine, a Schedule II controlled substance; (2) codeine, a Schedule II controlled substance; (3) codeine combination products,

Schedule III controlled substances;  (4) ketamine, a Schedule III controlled substance; (5) alprazolam (the generic form of Xanax®), a Schedule IV controlled substance; (6) clorazepate, a Schedule IV controlled substance; (7) clonazepam (the generic form of Klonopin®), a Schedule IV controlled substance; (8) chlordiazepoxide (the generic form of Librium®), a Schedule IV controlled substance; (9) dextropropoxyphene (the generic form of Darvon® and Darvocet®), a Schedule IV controlled substance; (10) diazepam (the generic form of Valium®), a Schedule IV controlled substance; (11) lorazepam (the generic form of Ativan®), a Schedule IV controlled substance; (12) modafinil (the generic form of Provigil®), a Schedule IV controlled substance; (13) nitrazepam (the generic form of Mogadon®) a Schedule IV controlled substance; (14) pentazocine (the generic form of Talwin®), a Schedule IV controlled substance; (15) sibutramine hydrochloride (the generic form of Meridia®), a Schedule IV controlled substance; (16) zaleplon (the generic form of Sonata®), a Schedule IV controlled substance; and (17) zolpidem tartrate (the generic form of Ambien®), a Schedule IV controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).  Some of the customers of these websites were located in the Eastern District of Pennsylvania.

41.    The website operators entered into an agreement with the Bansal organization to illegally ship vast quantities of controlled substance pharmaceutical drugs to the customers patronizing the website operator defendants' websites.

42.    The website operators communicated regularly with the Bansal organization defendants via e-mail and by telephone, in furtherance of the agreement.

43.    The website operators sent regular orders to the Bansal organization via e-mail in the form of spreadsheets containing the names and mailing addresses of consumers in the United

States and elsewhere who had ordered drugs through websites maintained by the website operators.

44.    The orders sent by the website operators were processed by defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA and forwarded to other members of the Bansal organization including defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL, SANJEEV ANAND SRIVASTAV, and others, including David Armstrong and Elizabeth Armstrong (both charged elsewhere), for fulfillment.

45.    Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, and HIMANSHU KULSHRESTHA regularly sent, and caused to be sent, bulk quantities of controlled substance pharmaceutical drugs to depots in the United States to be used to fulfill orders placed by the website operators.

46.    Controlled substance pharmaceutical drugs were packaged for shipment to consumers in the United States and elsewhere at depots located, at various times during the life of the conspiracy, in the Eastern District of Pennsylvania, in the Eastern District of New York, and in India, among other places, and shipped by defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL, SANJEEV ANAND SRIVASTAV, RICHARD DABNEY, David Armstrong, Elizabeth Armstrong and others unknown to the grand jury.

47.    Once the controlled substance pharmaceutical drugs were shipped to the consumers, members of the Bansal organization, including BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU

-15-

KULSHRESTHA, sent tracking numbers for those packages, via e-mail, to the particular website operator who had placed the order.

48.    The website operators collected payment in advance, from credit card processors, from consumers purchasing controlled substance pharmaceutical drugs with credit cards from their websites.

49.    Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA sent regular invoices to the website operators for controlled substance pharmaceutical drugs shipped to consumers, and sent frequent reminders when invoices were not paid in a timely fashion.

50.    The website operators paid for controlled substance pharmaceutical drugs supplied to consumers by making checks and wire transfers to accounts specified by defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, and HIMANSHU KULSHRESTHA.

51.    From in or about July 2003, the exact date being unknown to the grand jury, until at least April 19, 2005, the defendants and others generated sales in the many millions of dollars.

52.    From in or about August 2004, the exact date being unknown to the grand jury, until in or about April 2005, the defendants and others sold at least 500,000 dosage units of controlled substance pharmaceutical drugs in Schedule II, at least 1,600,000 dosage units of controlled substance pharmaceutical drugs in Schedule III, and at least 7,000,000 dosage units of controlled substance pharmaceutical drugs in Schedule IV.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, the following overt acts, among others, were committed in the Eastern District of Pennsylvania and elsewhere:

-16-

1.      In or about January 2004, in Radnor, Pennsylvania, defendants AKHIL BANSAL and ATUL VIJAYKUMAR PATIL met with defendant RICHARD DABNEY and offered to pay defendant RICHARD DABNEY to mail packages of drugs on their behalf.

2.      In or about January 2004, defendant AKHIL BANSAL directed defendant RICHARD DABNEY to use the alias "Leroy Jones" when mailing packages of drugs.

3.      Between on or about February 9, 2004, and on or about February 27, 2004, defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL and RICHARD DABNEY delivered to Airborne Express in Chester, Pennsylvania, approximately 4,336 packages containing controlled substance pharmaceutical drugs and non-controlled prescription drugs for shipment to consumers throughout the United States.

4.      On or about March 27, 2004, defendant JULIE AGARWAL sent an e-mail message to a prospective customer identifying herself as the organization's sales manager, and quoting prices for shipments to the United States "without any customs problems" for generic Viagra® and other prescription drugs.

5.      On or about April 7, 2004, in Philadelphia, Pennsylvania, defendants AKHIL BANSAL and ATUL VIJAYKUMAR PATIL discussed with defendant RICHARD DABNEY money they owed to him for past shipments of drugs.

6.      On or about June 14, 2004, defendant YATINDRA KUMAR AGARWAL sent an e-mail message to a prospective customer identifying himself as the organization's marketing manager, and quoting prices for shipments to the United States for numerous controlled substance pharmaceutical drugs and other prescription drugs.

-17-

7.    On or about June 14, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to a prospective customer directing the customer to contact "our representative Dr. Akhil" at a telephone number in Philadelphia to discuss the Bansal organization's offer in an earlier email to supply controlled substance and non-controlled pharmaceutical drugs to customers in the United States.

8.    On or about September 8, 2004, defendant JITENDRA ARORA sent an e-mail message to defendant AKHIL BANSAL stating "attached is the price list we are working with and all our clients are allready setup with these prices so we cannot go back and change anything. We can guarantee you volume and timely payment.  Please send me back an e-mail or call me and let me know if u can work with these prices and also shipping charges for both India and US."[2] The attached price list included prices for controlled and non-controlled pharmaceutical drugs.

9.    On or about September 9, 2004, defendant AKHIL BANSAL visited 105-02 62nd Drive, Fresh Meadows, New York, where controlled substance and non-controlled pharmaceutical drugs were packaged for shipment to consumers by the Bansal organization.

10.    On or about September 14, 2004, David Armstrong and Elizabeth Armstrong, both charged elsewhere, shipped and caused to be shipped via the United States Parcel Service approximately 250 packages containing controlled substance pharmaceutical drugs.

11.    On or about September 27, 2004, defendant WILLIAM RANDALL REED, who had just purchased a kilogram of ketamine from defendant BRIJ BHUSHAN BANSAL, sent an

---

[2] Throughout this indictment, direct quotations from e-mail communications are rendered as in the originals, with all errors in grammar, syntax and spelling intact.

-18-

e-mail message to BRIJ BHUSHAN BANSAL stating: "PLEASE let me know when you get more keys in ASAP! I know you probably get tired of me saying that, but as long as my cousin can sell them at the rate he is going, I hate for the business with this product to stop. If there is anyway you can get them in the US without taking major risks, that would be outstanding for ALL of us. Believe me, there is ALOT of money for us to still make!"

12.     On or about September 29, 2004, defendant KEVIN ATKINSON sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL requesting "an updated list of the products available. I would like to include them on my sites." On October 1, 2004, BRIJ BANSAL sent an email to KEVIN ATKINSON stating "Please find (a)ttached Price list," with a detailed price list of various controlled substances and non-controlled pharmaceutical drugs.

13.     On or about October 14, 2004, in response to an inquiry by defendant CHRISTOPHER GEOFF LAINE, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant CHRISTOPHER GEOFF LAINE offering to supply "pure medicinal grade Ephedrine hcl in powder form."

14.     On or about October 16, 2004, in response to an inquiry by defendant KEVIN ATKINSON about whether the Bansal organization could supply certain drugs, defendant BRIJ BHUSHAN BANSAL wrote in an e-mail message to defendant ATKINSON: "Ketamine— Minimum 1Kg packing – $12500 per kg.– can be shipped within 24 hrs to USA address only; Ephedrine – Minimum 1Kg packing – $7500 per kg.– can be shipped within 5days to USA address only. Generic Sildenafil citrate 100 — $500 per 1000 tabs – can be shipped within 24 hours to USA address only and $ 300 per 1000 from India to canada - will be shipped within 24

-19-

hours by Fed ex and delivery times will be 6-7 days. For all these items advance payment has to be made."

15.    On or about October 25, 2004, defendant JITENDRA ARORA sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL stating that "some of my clients wants copies of your drug and export license so they think we are legit."

16.    On or about October 27, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant JITENDRA ARORA, in response to an inquiry by defendant JITENDRA ARORA the day before, that he can supply 100 kilograms of medicinal grade Ephedrine HCl in one-kilogram packages, at $6,500 per kilogram, every month, but only to the United States, not in Canada, as he does not have the connections needed to get the drug through Canadian customs.

17.    On or about October 29, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to an individual offering to supply generic drugs from India, stating that his organization "can dropship your orders in USA and also can supply you in bulk all the Indian generic drugs as per your requirement . . . we can ship up to 400-500 orders per day within 24 hours of receiving your firm orders."

18.    On or about January 4, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant ATUL VIJAYKUMAR PATIL directing defendant PATIL: "after receiving the payment please ship 2 units [of ketamine] and give me the tracking number."

19.    On or about January 11, 2005, defendant ATUL VIJAYKUMAR PATIL sent an e-mail message to defendant SANJEEV ANAND SRIVASTAV enclosing scanned images of

three handwritten pages showing the inventory of drugs in the Bansal organization's inventory in the United States as of December 18, 2004.

20.    On or about January 11, 2005, David Armstrong sent to defendant SANJEEV ANAND SRIVASTAV a spreadsheet documenting the present inventory in the New York depot maintained by the Bansal organization, showing more than 4 million pills in stock as of January 7, 2005.

21.    On or about January 14, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant SANJEEV ANAND SRIVASTAV with a copy to defendant AKHIL BANSAL, directing defendant SANJEEV ANAND SRIVASTAV to send to a customer in the United States "30,000 tabs - zolpidem 10 mg, 10,000 tabs - Cialis 20 mg, 10,000 tabs - Viagra 100 mg; 200 tabs Modalert 100 mg; 200 tabs - PWC 30 mg; 200 tabs - codeine = 5 mg." (15 mg.)

22.    On or about January 15, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant KEVIN ATKINSON, explaining that prices had gone up: "the Indian Govt has imposed Narcotic laws strictly.  All the drugs which comes under the narcotics category will be obtained directly to the patient from the retailer with a valid doctors prescription only. Thes[e] laws will cause serious problems for us in receiving the medicines from the wholesellers and the dealers."

23.    On or about January 20, 2005, defendants HIMANSHU KULSHRESTHA and BRIJ BHUSHAN BANSAL sent an e-mail message to defendant AKHIL BANSAL with a copy to defendant SANJEEV ANAND SRIVASTAV, enclosing as an attachment a spreadsheet document called "Cartons," which included details of scores of large-scale bulk shipments of

-21-

drugs – including most of the controlled substance pharmaceutical drugs described in Paragraphs 4-20, 36 and 40, *supra,* as well as various non-controlled prescription drugs such as Viagra, Carisoma and Cipro from India to the United States between March 2004 and January 12, 2005, and reflecting the dates on which defendant AKHIL BANSAL received the shipments of drugs in the United States.

24.    On or about January 24, 2005, defendant SANJEEV ANAND SRIVASTAV sent an e-mail message to defendant AKHIL BANSAL and a copy to defendant ATUL VIJAYKUMAR PATIL with an attached document showing bulk shipments of drugs from India to the United States.

25.    On or about January 24, 2005, defendant HIMANSHU KULSHRESTHA sent an e-mail message to defendant AKHIL BANSAL providing a list of customers owing money to the Bansal organization, stating "as per your order I m sending the pending amounts sheet till today. The total pending amount is $995,129.63. I think it is very large pending amount on the clients. So please control it and give me the instructions about it."

26.    On or about February 3, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant WILLIAM RANDALL REED, stating: "We have been successful in obtaining the fresh supplies of Keys *[kilograms]* and hope by the next week they will reach US. As soon as they are there ill inform you and immediately send the 3 keys to your cuz. in NY. . . . Any further order will be welcomed at this stage as there is a very big shortage of this product, so you ask your cuz to keep sufficient stocks with him. I am highly grateful to you for your cooperation and the trust in me. Hope our business flourish more in the coming times."

-22-

27.    On or about February 3, 2005, defendant HIMANSHU KULSHRESTHA sent an

e-mail message to Rohn Wallace, charged elsewhere in this indictment, which stated: "The list

which I had sent [l]ast night contains both type of medicines, one which we directly ship from

NY office and one which we ship from India office to USA then repacked and shipped to the

customer. And now the attached list I'[m] sending contains the meds will we shipped from the

NY office the day after receiving your orders." The attached list identified various controlled and

non-controlled prescription drugs.

28.    On or about February 5, 2005, defendant BRIJ BHUSHAN BANSAL sent an

e-mail message to defendant WILLIAM RANDALL REED, a/k/a "millerlight," stating: "We will

first send the 3 keys to you. . . . Then we will inform you that how many keys we can supply you.

The problem is that India Govt. has placed this product under the Narcotics list. So the

manufacturer can give this product to valid license holders under the drug rules and only to those

drug manufacturer which are making Inj *[injections]* form *[from]* this. They have to keep all the

records of purchase and sales (consumption). If we purchase this under the license we can not

show the sales. Hence we are having problems. We have found out some ways to procure this but

it may be in limited quantities. We shall keep on trying to get more."

29.    On or about February 12, 2005, one day after extensive worldwide media

coverage of a series of lawsuits filed by Microsoft, Inc., and Pfizer, Inc., against internet

pharmacies selling generic Viagra®, defendant AKHIL BANSAL sent an e-mail message to

defendant BRIJ BHUSHAN BANSAL telling defendant BRIJ BHUSHAN BANSAL which

customers to keep and which customers' business they should "STOP RIGHT NOW!!!," noting

-23-

"already losses 160,000.00 approx., expected more loss 100,000.00 approx., total payments pending 680,000.00 approx."

30.    On or about February 16, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant FRED MULLINIX, a/k/a "Tom Peters," demanding payment of overdue balances and telling defendant FRED MULLINIX "we will only deal with those clients who pay us fast and will keep only the current invoice due."

31.    On or about February 16, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant FRED MULLINIX, a/k/a "Tom Peters," enclosing a letter in which he wrote that the "government of India has posed several restrictions on many medicines and declared them as 'Narcotic Substance.' . . . There are huge penalties and even imprisonment as a punishment if someone is found selling them without a prescription. Till now we were supplying you with the stock we maintain as a buffer but it is now coming to a near end. . . . we have no choice but to pay bribes and premiums to get our medicines. This is possible (and in our benefit) only because of some helpful corrupt people in India. We therefore would be increasing the prices of some medicines which are there in 'narcotics list', from 1st of March."

32.    On or about February 16, 2005, in response to an e-mail message from defendant KEVIN ATKINSON referring to "Rufecoxib 25 mg. of Vioxx," which asked "this product has been banned in USA and Canada (are you sure we can offer this) - seems highly risky to me"; defendant BRIJ BHUSHAN BANSAL replied "we will supply only if there is any order."

33.    On or about February 16, 2005, defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL, assisted by David Armstrong, created a website – *www.orderspanel.com* – to facilitate the transmission of orders to the Bansal organization.

-24-

34.     On or about February 17, 2005, defendant VICTOR DEVORE sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and HIMANSHU KULSHRESTHA asking for a prescription for a customer for "a work situation," noting "if you are able to send the customer a prescription I will submit an additional $25 to you as a 'medical consultation fee.'" The product was Valium 10mg.,100 tablets.

35.     On or about February 28, 2005, defendants BRIJ BANSAL and AKHIL BANSAL sent an e-mail message to defendant FRED MULLINIX, a/k/a "Tom Peters," providing defendant FRED MULLINIX with a unique login name and password to access the www.orderspanel.com website in order to upload orders for pharmaceutical drugs from his website.

36.     On or about March 7, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant WILLIAM RANDALL REED stating that the package of ketamine he had sent to defendant REED bore a fictitious return name and address.

37.     On or about March 7, 2005, defendant WILLIAM RANDALL REED received a package containing approximately two kilograms of ketamine that had been shipped to him at the direction of defendant BRIJ BHUSHAN BANSAL.

38.     On or about March 13, 2005, defendant AKHIL BANSAL sent an e-mail to David Armstrong and Elizabeth Armstrong, with copies to defendants SANJEEV ANAND SRIVASTAV and ATUL VIJAYKUMAR PATIL, stating that his father was having health problems and, while defendant AKHIL BANSAL remains in India with his father, he appoints defendant SANJEEV ANAND SRIVASTAV as his replacement and, "in case of his absence, the

-25-

decision powers would be given to Atul Patil. . . . I promise that I will not let the business suffer because of my personal problems."

39.    On or about March 13, 2005, defendant SANJEEV ANAND SRIVASTAV sent a reply e-mail message to defendant AKHIL BANSAL stating, in part: "please don't worry about here. I will take the command . . . ."

40.    On or about March 23, 2005, defendant HIMANSHU KULSHRESTHA sent an e-mail message to a customer stating: "we are trying hard for Valium 10 but due to government restrictions on Roche India, it is not available. Instead we have ordered 1 million tabs of generic diazepam 10 mg tablets . . . ."

41.    On or about April 19, 2005, at Point Lookout, New York, defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, HIMANSHU KULSHRESTHA, ATUL VIJAYKUMAR PATIL, SANJEEV ANAND SRIVASTAV, and others, including David Armstrong and Elizabeth Armstrong (both charged elsewhere) possessed with intent to distribute substantial quantities of controlled and non-controlled pharmaceutical drugs, including morphine, ketamine and aprazolam.

42.    On or about April 19, 2005, at College Point, New York, defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, HIMANSHU KULSHRESTHA, ATUL VIJAYKUMAR PATIL, SANJEEV ANAND SRIVASTAV, and others, including David Armstrong and Elizabeth Armstrong (both charged elsewhere) possessed with intent to distribute substantial quantities of controlled and non-controlled pharmaceutical drugs, including codeine and codeine combination products, ketamine, aprazolam, and zolpidem.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 35 and 37 through 52, and the overt acts of Count One, are

incorporated here.

2.      Beginning in or before July 2003, the exact date being unknown to the grand jury,

and continuing until on or about April 19, 2005, in the Eastern District of Pennsylvania and

elsewhere, defendants

**BRIJ BHUSHAN BANSAL**
**AKHIL BANSAL**
**JULIE AGARWAL,**
**a/k/a "Jaya,"**
**YATINDRA KUMAR AGARWAL**
**HIMANSHU KULSHRESTHA**
**ATUL VIJAYKUMAR PATIL**
**SANJEEV ANAND SRIVASTAV**
**JITENDRA ARORA,**
**a/k/a "Jitu,"**
**KEVIN ATKINSON**
**VICTOR DEVORE**
**FRED MULLINIX,**
**a/k/a "Tom Peters,"**
**MATTHEW JOSEPH MELAO**
**CHRISTOPHER GEOFF LAINE**
**WILLIAM RANDALL REED,**
**a/k/a "millerlight," and**
**RICHARD DABNEY**

conspired and agreed together, and with others known and unknown to the grand jury, to

knowingly and intentionally import into the customs territory of the United States, from a place

outside thereof, that is, India, Schedule II, III and IV controlled substances, including but not

limited to, quantities of the following controlled substances: (1) morphine, a Schedule II

-28-

controlled substance; (2) codeine, a Schedule II controlled substance; (3) codeine combination products,  Schedule III controlled substances;  (4) ketamine, a Schedule III controlled substance; (5) alprazolam (the generic form of Xanax®), a Schedule IV controlled substance; (6) clorazepate, a Schedule IV controlled substance; (7) clonazepam (the generic form of Klonopin®), a Schedule IV controlled substance; (8) chlordiazepoxide (the generic form of Librium®), a Schedule IV controlled substance; (9) dextropropoxyphene (the generic form of Darvon® and Darvocet®), a Schedule IV controlled substance; (10) diazepam (the generic form of Valium®), a Schedule IV controlled substance; (11) lorazepam (the generic form of Ativan®), a Schedule IV controlled substance; (12) modafinil (the generic form of Provigil®), a Schedule IV controlled substance; (13) nitrazepam (the generic form of Mogadon®) a Schedule IV controlled substance; (14) pentazocine (the generic form of Talwin®), a Schedule IV controlled substance; (15) sibutramine hydrochloride (the generic form of Meridia®), a Schedule IV controlled substance; (16) zaleplon (the generic form of Sonata® ), a Schedule IV controlled substance; and (17) zolpidem tartrate (the generic form of Ambien®), a Schedule IV controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 963.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 through 35 and 37 through 52, and the overt acts of Count One, are incorporated here.

2.  Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least on or about April 19, 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL**
**and**
**AKHIL BANSAL**

engaged in a continuing criminal enterprise in that they:

   (a)  violated one or more provisions of subchapter I of Chapter 13 of Title 21, United States Code, which are felonies, and such violations were part of a continuing series of violations of subchapter I of Chapter 13 of Title 21, United States Code, including but not limited to, the offenses contained in Counts One and Two of this indictment, and the Overt Acts listed in this indictment at paragraphs 1 through 42 of Count One of this indictment;

   (b)  the series of violations described in paragraph (a) were undertaken in concert with five or more persons, known and unknown to the grand jury, with respect to whom defendants occupied a position of organizer, a supervisory position and a position of management; and

   (c)  defendants obtained substantial income and resources from the violations described in paragraphs (a) and (b).

   In violation of Title 21, United States Code, Section 848.

-30-

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 21 through 35 of Count One are incorporated here.

At all times material to this indictment:

2.      The United States Food and Drug Administration (FDA) was the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 301-397.

### The Federal Food, Drug, and Cosmetic Act

3.      Under the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. §§ 301-397, the term "drug" included articles which were (1) recognized in the official United States Pharmacopeia or official National Formulary or any supplement to any of them; (2) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (3) intended to affect the structure or any function of the body of man.  21 U.S.C. § 321(g)(1)(A) (B) and (C).

4.      Some of the drugs regulated under the FD&C Act were "prescription drugs." "Prescription drugs" were those drugs, which, because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drugs as a condition of FDA approving any such drug to be placed on the market.  21 U.S.C. § 353(b)(l)(A) and (B).

5.    Sildenafil citrate, approved to be sold in the United States as Viagra®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

6.    Tadalafil, approved to be sold in the United States as Cialis®, and in India as Apcalis, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

7.    Vardenafil, approved to be sold in the United States as Levitra®, was indicated for treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

8.    Venlafaxine, approved to be sold in the United States as Effexor XR® was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

9.    Carisoprodol, approved to be sold in the United States as Soma®, was indicated for treatment of muscle spasms, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

10.    Sertraline, approved to be sold in the United States as Zoloft®, was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

11.    Tramadol, approved to be sold in the United States as Ultram®, was indicated for treatment of pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

-32-

12.    Paroxetine, approved to be sold in the United States as Paxil®, was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

13.    A drug was deemed to be misbranded unless its labeling contained adequate directions for use, which was defined by regulation as directions under which a layman can use a drug safely and for the purposes for which it was intended.  Title 21, United States Code, Section 352(f); 21 C.F.R. § 201.5.

14.    Prescription drugs were exempt from the adequate directions for use requirement provided that they were properly dispensed under the supervision of a properly licensed medical practitioner. Title 21, United States Code, Section 353(b)(2).

15.    There can be no adequate directions for lay use of a prescription drug; therefore, prescription drugs dispensed not under the supervision of a properly licensed medical practitioner were misbranded within the meaning of Title 21, United States Code, Section 352(f).

16.    The act of dispensing prescription drugs without the prescription of a practitioner licensed by law to administer such drug was an act which caused the drug to become misbranded while held for sale.  Title 21, United States Code, Section 353(b)(1).

17.    Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until on or about April 19, 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL,**
**AKHIL BANSAL**
**JULIE AGARWAL,**
**a/k/a "Jaya,"**
**YATINDRA KUMAR AGARWAL**
**HIMANSHU KULSHRESTHA**
**ATUL VIJAYKUMAR PATIL**

-33-