caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

31.     Defendant AKHIL BANSAL was a physician licensed to practice medicine and dispense pharmaceutical drugs in his native India.  Defendant AKHIL BANSAL was at no time licensed to practice medicine in the United States, or to prescribe or dispense controlled substances or non-controlled pharmaceutical drugs in the United States, where he resided, in the Eastern District of Pennsylvania, at all times material to this indictment.  Defendant AKHIL BANSAL, as the United States based head of the Bansal organization, received orders for pharmaceutical drugs from customers in the United States and elsewhere, and distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

32.     Defendants JULIE AGARWAL and YATINDRA AGARWAL were India-based managers of the Bansal organization who solicited business for the organization by contacting the owners of internet pharmacy websites and offering to fill orders for controlled substance pharmaceutical drugs and non-controlled prescription drugs ordered by their customers. Defendants JULIE AGARWAL and YATINDRA AGARWAL took orders from the website-operator customers of the organization, responded to questions from the website-operator customers, and distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance

-8-

pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

33.     Defendant HIMANSHU KULSHRESTHA was an India-based member of the Bansal organization who received orders from the owners of internet pharmacy websites, transmitted those orders to depots in India and in the United States, provided tracking numbers to the website-operator customers of the organization showing shipments of drugs to their customers, and sent invoices to the website-operator customers for millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs that had been distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States.

34.     Defendant ATUL VIJAYKUMAR PATIL was a manager in the Bansal organization based in Philadelphia, in the Eastern District of Pennsylvania, who assisted defendant AKHIL BANSAL in soliciting an individual to ship controlled substance pharmaceutical drugs for the Bansal organization, accepted currency in payment for controlled substances sold to customers, shipped controlled substances to customers, and established an offshore bank account for the purpose of receiving funds sent by customers of the organization in payment for millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs that had been distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States.

35.     Defendant SANJEEV ANANT SRIVASTAV was a physician licensed to practice medicine and dispense pharmaceutical drugs in his native India. Defendant SANJEEV ANANT

-9-

SRIVASTAV was at no time licensed to practice medicine in the United States, or to prescribe or dispense controlled substances or non-controlled pharmaceutical drugs in the United States, where he resided at all times material to this indictment. Defendant SANJEEV ANANT SRIVASTAV was a manager in the Bansal organization who, at the direction of defendant BRIJ BHUSHAN BANSAL and defendant AKHIL BANSAL, distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

36.     Defendant JITENDRA ARORA was the Canada-based affiliate of several businesses that operated websites through which defendants distributed and dispensed controlled substances. Defendant JITENDRA ARORA received orders from these businesses, forwarded the orders to the Bansal organization, and distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

37.     Defendant KEVIN ATKINSON was an affiliate of several businesses that operated websites through which defendants distributed and dispensed controlled substances, and laundered the proceeds thereof. Defendant KEVIN ATKINSON received orders from these businesses, forwarded the orders to the Bansal organization, and distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

-10-

38.    Defendant VICTOR DEVORE was the Florida-based owner and operator of a business, Big City Corp., that operated various websites through which defendants distributed and dispensed controlled substances. Some of these websites included *www.bigcitymeds.com*, *www.greentreerx.com, www.mercomeds.com, www.rxapproved.com, and www.rxglobally.com.* Defendant VICTOR DEVORE received orders from these websites, forwarded the orders to the Bansal organization, distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

39.    Defendant TOM PETERS was the owner and operator of a business that operated a website, *www.myemeds.com*, through which defendants distributed and dispensed controlled substances. Defendant TOM PETERS received orders from these websites, forwarded the orders to the Bansal organization, and distributed, dispensed, and caused to be distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

40.    Defendants MATTHEW JOSEPH MELAO and CHRISTOPHER GEOFF LAINE were the owners and operators of a business that operated various websites through which defendants distributed and dispensed controlled substances. Some of these websites included *www.ourprescriptionsforless.com* and *www.yourpharmacyone.com.* Defendants MATTHEW JOSEPH MELAO and CHRISTOPHER GEOFF LAINE received orders from these websites, forwarded the orders to the Bansal organization, and distributed, dispensed, and caused to be

-11-

distributed and dispensed to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs in Schedules II, III and IV, as well as millions of dosage units of non-controlled prescription drugs.

41.     Defendant WILLIAM RANDALL REED was an individual who responded to a solicitation by defendant BRIJ BHUSHAN BANSAL on an internet bulletin board offering to sell controlled substances. Defendant WILLIAM RANDALL REED thereafter purchased from the Bansal organization at least 20 kilograms of ketamine, a Schedule III controlled substance, for resale to others.

42.     Defendant RICHARD DABNEY was a business owner in the Eastern District of Pennsylvania who was offered payment by defendants AKHIL BANSAL and ATUL VIJAYKUMAR PATIL to ship to consumers in the United States, on behalf of the Bansal organization, boxes containing controlled substance pharmaceutical drugs in Schedules II, III and IV, and non-controlled prescription drugs.

43.     Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least in or about April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL**
**AKHIL BANSAL**
**JULIE AGARWAL,**
**a/k/a "Jaya,"**
**YATINDRA KUMAR AGARWAL**
**HIMANSHU KULSHRESTHA**
**ATUL VIJAYKUMAR PATIL**
**SANJEEV ANANT SRIVASTAV**
**JITENDRA ARORA,**
**a/k/a "Jitu,"**
**KEVIN ATKINSON**

**VICTOR DEVORE**
**TOM PETERS**
**MATTHEW JOSEPH MELAO**
**CHRISTOPHER GEOFF LAINE**
**WILLIAM RANDALL REED,**
a/k/a "millerlight," and
**RICHARD DABNEY**

conspired and agreed together, and with others known and unknown to the grand jury, to

knowingly and intentionally distribute Schedule II, III and IV controlled substances, including

but not limited to, quantities of the following controlled substances: (1) codeine, a Schedule II

controlled substance; (2) codeine with paracetamol (PWC), a Schedule III controlled substance;

(3) ketamine, a Schedule III controlled substance; (4) alprazolam (the generic form of Xanax®), a

Schedule IV controlled substance; (5) clonazepam (the generic form of Klonopin®), a Schedule

IV controlled substance; (6) chlordiazepoxide (the generic form of Librium®), a Schedule IV

controlled substance; (7) dextropropoxyphene (the generic form of Darvon® and Darvocet®), a

Schedule IV controlled substance; (8) diazepam (the generic form of Valium®), a Schedule IV

controlled substance; (9) lorazepam (the generic form of Ativan®), a Schedule IV controlled

substance; (10) modafinil (the generic form of Provigil®), a Schedule IV controlled substance;

(11) nitrazepam (the generic form of Mogadon®) a Schedule IV controlled substance;

(12) pentazocine (the generic form of Talwin®), a Schedule IV controlled substance;

(13) sibutramine hydrochloride (the generic form of Meridia®), a Schedule IV controlled

substance; and (14) zolpidem tartrate (the generic form of Ambien®), a Schedule IV controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1).

## OBJECT OF THE CONSPIRACY

44.     It was the object of the conspiracy for the conspirators to obtain substantial

revenues and profits by illegally offering for sale and selling – without prescriptions – controlled

substance pharmaceutical drugs via internet websites and otherwise, by illegally importing and

packaging those pharmaceutical drugs and causing them to be shipped to consumers in the

United States and elsewhere.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that:

45.     Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL,

YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA used e-mail and

various internet bulletin boards and chat rooms to offer the services of the Bansal organization to

supply controlled substance pharmaceutical drugs to fulfill orders placed by consumers in the

United States and elsewhere, principally via internet pharmacy websites.  No prescriptions or

consultations with physicians were required to fulfill any orders placed by these customers.

46.     Defendant BRIJ BHUSHAN BANSAL procured controlled substance

pharmaceutical drugs from suppliers in India which had not been approved by the United States

government, which he then exported to the United States and elsewhere.

47.     Operators of internet pharmacy websites, defendants JITENDRA ARORA, TOM

PETERS, VICTOR DEVORE, MATTHEW JOSEPH MELAO, CHRISTOPHER GEOFF

LAINE, and KEVIN ATKINSON (collectively referred to in this count as the "website operator

defendants"), operated internet website facilities, and entered into agreements with others

operating such websites, offering controlled substance pharmaceutical drugs for sale to

-14-

consumers without a prescription as required by law.  Some of the controlled substance

pharmaceutical drugs offered on these websites were (1) codeine, a Schedule II controlled

substance; (2) codeine with paracetamol (PWC), a Schedule III controlled substance;

(3) ketamine, a Schedule III controlled substance; (4) alprazolam (the generic form of Xanax®), a

Schedule IV controlled substance; (5) clonazepam (the generic form of Klonopin®), a Schedule

IV controlled substance; (6) chlordiazepoxide (the generic form of Librium®), a Schedule IV

controlled substance; (7) dextropropoxyphene (the generic form of Darvon® and Darvocet®), a

Schedule IV controlled substance; (8) diazepam (the generic form of Valium®), a Schedule IV

controlled substance; (9) lorazepam (the generic form of Ativan®), a Schedule IV controlled

substance; (10) modafinil (the generic form of Provigil®), a Schedule IV controlled substance;

(11) nitrazepam (the generic form of Mogadon®) a Schedule IV controlled substance;

(12) pentazocine (the generic form of Talwin®), a Schedule IV controlled substance;

(13) sibutramine hydrochloride (the generic form of Meridia®), a Schedule IV controlled

substance; and (14) zolpidem tartrate (the generic form of Ambien®), a Schedule IV controlled

substance.  Some of the customers of these websites were located in the Eastern District of

Pennsylvania.

     48.    The website operator defendants entered into an agreement with the Bansal

organization to illegally ship vast quantities of controlled substance pharmaceutical drugs to the

customers patronizing the website operator defendants' websites.

     49.    The website-operator defendants communicated regularly with the Bansal

organization defendants via e-mail and by telephone, in furtherance of the agreement.

50.     The website-operator defendants sent regular orders to the Bansal organization via e-mail in the form of spreadsheets containing the names and mailing addresses of consumers in the United States and elsewhere who had ordered drugs through websites maintained by the website-operator defendants.

51.     The orders sent by the website-operator defendants were processed by defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA and forwarded to other members of the Bansal organization including defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL, SANJEEV ANANT SRIVASTAV, and others, including David Armstrong and Elizabeth Armstrong (both charged elsewhere), for fulfillment.

52.     Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, and HIMANSHU KULSHRESTHA regularly sent, and caused to be sent, bulk quantities of controlled substance pharmaceutical drugs to depots in the United States to be used to fulfill orders placed by the website-operator defendants.

53.     Controlled substance pharmaceutical drugs were packaged for shipment to consumers in the United States and elsewhere at depots located, at various times during the life of the conspiracy, in the Eastern District of Pennsylvania, in the Eastern District of New York, and in India, among other places, and shipped by defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL, SANJEEV ANANT SRIVASTAV, RICHARD DABNEY, David Armstrong, Elizabeth Armstrong and others unknown to the grand jury.

54.     Once the controlled substance pharmaceutical drugs were shipped to the consumers, members of the Bansal organization, including BRIJ BHUSHAN BANSAL, AKHIL

-16-

BANSAL, JULIE AGARWAL, YATINDRA KUMAR AGARWAL, and HIMANSHU

KULSHRESTHA, sent tracking numbers for those packages, via e-mail, to the particular

website-operator defendant who had placed the order.

55.     The website-operator defendants collected payment in advance, via credit card,

from consumers purchasing controlled substance pharmaceutical drugs from their websites.

56.     Defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, JULIE AGARWAL,

YATINDRA KUMAR AGARWAL, and HIMANSHU KULSHRESTHA sent regular invoices

to the website-operator defendants for controlled substance pharmaceutical drugs shipped to

consumers, and sent frequent reminders when invoices were not paid in a timely fashion.

57.     The website-operator defendants paid for controlled substance pharmaceutical

drugs supplied to consumers by sending checks and wire transfers to accounts specified by

defendants BRIJ BHUSHAN BANSAL, AKHIL BANSAL, and HIMANSHU KULSHRESTHA.

58.     From in or about July 2003, the exact date being unknown to the grand jury, until

at least April 2005, the defendants and others generated sales in the many millions of dollars.

59.     From in or about August 2004, the exact date being unknown to the grand jury,

until in or about March 2005, the defendants and others sold at least 400,000 dosage units of

controlled substance pharmaceutical drugs in Schedule II, at least 2,700,000 dosage units of

controlled substance pharmaceutical drugs in Schedule III, and at least 12,287,000 dosage units

of controlled substance pharmaceutical drugs in Schedule IV.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, the following overt

acts were committed in the Eastern District of Pennsylvania and elsewhere:

-17-

1.      In or about January 2004, defendants AKHIL BANSAL and ATUL
VIJAYKUMAR PATIL met with defendant RICHARD DABNEY and offered to pay defendant
RICHARD DABNEY to mail packages of drugs on their behalf.

2.      In or about January 2004, defendant AKHIL BANSAL directed defendant
RICHARD DABNEY to use the alias "Leroy Jones" when mailing packages of drugs.

3.      Between on or about February 9, 2004, and on or about February 27, 2004,
defendants AKHIL BANSAL, ATUL VIJAYKUMAR PATIL and RICHARD DABNEY
delivered to Airborne Express in Chester, Pennsylvania, approximately 4,336 packages
containing controlled substance pharmaceutical drugs and non-controlled prescription drugs for
shipment to consumers throughout the United States.

4.      On or about March 27, 2004, defendant JULIE AGARWAL sent an e-mail
message to a prospective customer identifying herself as the organization's sales manager, and
quoting prices for shipments to the United States "without any customs problems" for generic
Viagra® and other prescription drugs.

5.      On or about April 7, 2004, defendants AKHIL BANSAL and ATUL
VIJAYKUMAR PATIL discussed with defendant RICHARD DABNEY money they owed to
him for past shipments of drugs.

6.      On or about June 14, 2004, defendant YATINDRA KUMAR AGARWAL sent an
e-mail message to a prospective customer identifying himself as the organization's marketing
manager, and quoting prices for shipments to the United States for numerous controlled
substance pharmaceutical drugs and other prescription drugs.

-18-

7.    On or about June 14, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to a prospective customer directing the customer to contact "our representative Dr. Akhil" at a telephone number in Philadelphia to discuss the Bansal organization's offer to supply controlled substance pharmaceutical drugs to customers in the United States.

8.    On or about September 8, 2004, defendant JITENDRA ARORA sent an e-mail message to defendant AKHIL BANSAL stating "attached is the price list we are working with and all our clients are allready setup with these prices so we cannot go back and change anything. We can guarantee you volume and timely payment.  Please send me back an e-mail or call me and let me know if u can work with these prices and also shipping charges for both India and US."[2]

9.    On or about September 9, 2004, defendant AKHIL BANSAL visited 105-02 62nd Drive, Fresh Meadows, New York, where controlled substance pharmaceutical drugs were packaged for shipment to consumers by the Bansal organization.

10.    On or about September 14, 2004, David Armstrong and Elizabeth Armstrong, both charged elsewhere, shipped and caused to be shipped via the United States Parcel Service approximately 250 packages containing controlled substance pharmaceutical drugs.

11.    On or about September 27, 2004, defendant WILLIAM RANDALL REED, who had just purchased a kilogram of ketamine from defendant BRIJ BHUSHAN BANSAL, sent an e-mail message to BRIJ BHUSHAN BANSAL stating: "PLEASE let me know when you get more keys in ASAP! I know you probably get tired of me saying that, but as long as my cousin

---

[2] Throughout this indictment, direct quotations from e-mail communications are rendered as in the originals, with all errors in grammar, syntax and spelling intact.

can sell them at the rate he is going, I hate for the business with this product to stop. If there is anyway you can get them in the US without taking major risks, that would be outstanding for ALL of us. Believe me, there is ALOT of money for us to still make!"

12.    On or about September 29, 2004, defendant KEVIN ATKINSON sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL requesting "an updated list of the products available. I would like to include them on my sites."

13.    On or about October 14, 2004, in response to an inquiry by defendant CHRISTOPHER GEOFF LAINE, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant CHRISTOPHER GEOFF LAINE offering to supply "pure medicinal grade Ephedrine hcl in powder form."

14.    On or about October 16, 2004, in response to an inquiry by defendant KEVIN ATKINSON about whether the Bansal organization could supply certain drugs, defendant BRIJ BHUSHAN BANSAL wrote in an e-mail message to defendant ATKINSON: "Ketamine— Minimum 1Kg packing – $12500 per kg.– can be shipped within 24 hrs to USA address only; Ephedrine –  Minimum 1Kg packing –  $7500 per kg.– can be shipped within 5days to USA address only.  Generic Sildenafil citrate 100 — $500 per 1000 tabs – can be shipped within 24 hours to USA address only and $ 300 per 1000 from India to canada  - will be shipped within 24 hours by Fed ex and delivery times will be 6-7 days. For all these  items advance payment has to be made."

15.    On or about October 25, 2004, defendant JITENDRA ARORA sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL stating that "some of my clients wants copies of your drug and export license so they think we are legit."

16.     On or about October 27, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant JITENDRA ARORA, in response to an inquiry by defendant JITENDRA ARORA the day before, that he can supply 100 kilograms of medicinal grade Ephedrine HCl in one-kilogram packages, at $6,500 per kilogram, every month, but only to the United States, not in Canada, as he does not have the connections needed to get the drug through Canadian customs.

17.     On or about October 29, 2004, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to an individual offering to supply generic controlled substance pharmaceutical drugs from India, stating that his organization "can dropship your orders in USA and also can supply you in bulk all the Indian generic drugs as per your requirement . . . we can ship up to 400-500 orders per day within 24 hours of receiving your firm orders."

18.     On or about January 4, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant ATUL VIJAYKUMAR PATIL directing defendant PATIL: "after receiving the payment please ship 2 units [of ketamine] and give me the tracking number."

19.     On or about January 11, 2005, defendant ATUL VIJAYKUMAR PATIL sent an e-mail message to defendant SANJEEV ANANT SRIVASTAV enclosing scanned images of three handwritten pages showing the inventory of drugs in the Bansal organization's inventory in the United States as of December 18, 2004.

20.     On or about January 11, 2005, David Armstrong sent to defendant SANJEEV ANANT SRIVASTAV a spreadsheet documenting the present inventory in the New York depot maintained by the Bansal organization, showing more than 4 million pills in stock as of January 7, 2005.

-21-

21.    On or about January 14, 2005, defendant BRIJ BHUSHAN BANSAL sent an

e-mail message to defendant SANJEEV ANANT SRIVASTAV with a copy to defendant AKHIL

BANSAL, directing defendant SANJEEV ANANT SRIVASTAV to send to a customer in the

United States "30,000 tabs - zolpidem 10 mg, 10,000 tabs - Cialis 20 mg, 10,000 tabs - Viagra

100 mg; 200 tabs Modalert 100 mg; 200 tabs - PWC 30 mg; 200 tabs - codeine 15 mg."

22.    On or about January 15, 2005, defendant BRIJ BHUSHAN BANSAL sent an

e-mail message to defendant KEVIN ATKINSON, explaining that prices had gone up: "the

Indian Govt has imposed Narcotic laws strictly.  All the drugs which comes under the narcotics

category will be obtained directly to the patient from the retailer with a valid doctors prescription

only. Thes[e] laws will cause serious problems for us in receiving the medicines from the

wholesellers and the dealers."

23.    On or about January 20, 2005, defendants HIMANSHU KULSHRESTHA and

BRIJ BHUSHAN BANSAL sent an e-mail message to defendant AKHIL BANSAL with a copy

to defendant SANJEEV ANANT SRIVASTAV, enclosing as an attachment a spreadsheet

document called "Cartons," which included details of scores of large-scale bulk shipments of

drugs – including most of the controlled substance pharmaceutical drugs described in Paragraphs

4-17, 20-28, 43 and 47, *supra* – from India to the United States between March 2004 and January

12, 2005, and reflecting the dates on which defendant AKHIL BANSAL received the shipments

of drugs in the United States.

24.    On or about January 24, 2005, defendant SANJEEV ANANT SRIVASTAV sent

an e-mail message to defendant AKHIL BANSAL and a copy to defendant ATUL

-22-

VIJAYKUMAR PATIL with an attached document showing bulk shipments of drugs from India to the United States.

25.    On or about January 24, 2005, defendant HIMANSHU KULSHRESTHA sent an e-mail message to defendant AKHIL BANSAL providing a list of customers owing money to the Bansal organization, stating "as per your order I m sending the pending amounts sheet till today. The total pending amount is $995,129.63. I think it is very large pending amount on the clients. So please control it and give me the instructions about it."

26.    On or about February 3, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant WILLIAM RANDALL REED, stating: "We have been successful in obtaining the fresh supplies of Keys *[kilograms]* and hope by the next week they will reach US. As soon as they are there ill inform you and immediately send the 3 keys to your cuz. in NY. . . . Any further order will be welcomed at this stage as there is a very big shortage of this product, so you ask your cuz to keep sufficient stocks with him. I am highly grateful to you for your cooperation and the trust in me. Hope our business flourish more in the coming times."

27.    On or about February 3, 2005, defendant HIMANSHU KULSHRESTHA sent an e-mail message to Rohn Wallace, charged elsewhere in this indictment, which stated: "The list which I had sent last night contains both type of medicines, one which we directly ship from NY office and one which we ship from India office to USA then repacked and shipped to the customer."

28.    On or about February 5, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant WILLIAM RANDALL REED, a/k/a "millerlight," stating: "We will first send the 3 keys to you. . . . Then we will inform you that how many keys we can supply you.

-23-

The problem is that India Govt. has placed this product under the Narcotics list. So the manufacturer can give this product to valid license holders under the drug rules and only to those drug manufacturer which are making Inj *[injections]* form *[from]* this. They have to keep all the records of purchase and sales (consumption). If we purchase this under the license we can not show the sales. Hence we are having problems. We have found out some ways to procure this but it may be in limited quantities. We shall keep on trying to get more."

29.     On or about February 12, 2005, one day after extensive worldwide media coverage of a series of lawsuits filed by Microsoft, Inc., and Pfizer, Inc., against internet pharmacies selling generic Viagra®, defendant AKHIL BANSAL sent an e-mail message to defendant BRIJ BHUSHAN BANSAL telling defendant BRIJ BHUSHAN BANSAL which customers to keep and which customers' business they should "STOP RIGHT NOW!!!," noting "already losses 160,000.00 approx., expected more loss 100,000.00 approx., total payments pending 680,000.00 approx."

30.     On or about February 16, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant TOM PETERS, demanding payment of overdue balances and telling defendant TOM PETERS "we will only deal with those clients who pay us fast and will keep only the current invoice due."

31.     On or about February 16, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant TOM PETERS enclosing a letter in which he wrote that the "government of India has posed several restrictions on many medicines and declared them as 'Narcotic Substance.' . . . There are huge penalties and even imprisonment as a punishment if someone is found selling them without a prescription. Till now we were supplying you with the

-24-

stock we maintain as a buffer but it is now coming to a near end. . . . we have no choice but to pay bribes and premiums to get our medicines. This is possible (and in our benefit) only because of some helpful corrupt people in India. We therefore would be increasing the prices of some medicines which are there in 'narcotics list', from 1st of March."

32.    On or about February 16, 2005, in response to an e-mail message from defendant KEVIN ATKINSON, which asked "this product has been banned in USA and Canada (are you sure we can offer this) - seems highly risky to me"; defendant BRIJ BHUSHAN BANSAL replied "we will supply only if there is any order."

33.    On or about February 16, 2005, defendants BRIJ BHUSHAN BANSAL and AKHIL BANSAL, assisted by David Armstrong, created a website – www.orderspanel.com – to facilitate the transmission of orders to the Bansal organization.

34.    On or about February 17, 2005, defendant VICTOR DEVORE sent an e-mail message to defendants BRIJ BHUSHAN BANSAL and HIMANSHU KULSHRESTHA asking for a prescription for a customer for "a work situation," noting "if you are able to send the customer a prescription I will submit an additional $25 to you as a 'medical consultation fee.'"

35.    On or about February 28, 2005, defendants BRIJ BANSAL and AKHIL BANSAL sent an e-mail message to defendant TOM PETERS providing defendant TOM PETERS with a unique login name and password to access the www.orderspanel.com website in order to upload orders for controlled substance pharmaceutical drugs from his website.

36.    On or about March 7, 2005, defendant BRIJ BHUSHAN BANSAL sent an e-mail message to defendant WILLIAM RANDALL REED stating that the package of ketamine he had sent to defendant REED bore a fictitious return name and address.

-25-.

37.    On or about March 7, 2005, defendant WILLIAM RANDALL REED received a package containing approximately two kilograms of ketamine that had been shipped to him by defendant ATUL VIJAYKUMAR PATIL at the direction of defendant BRIJ BHUSHAN BANSAL.

38.    On or about March 13, 2005, defendant AKHIL BANSAL sent an e-mail to David Armstrong and Elizabeth Armstrong, with copies to defendants SANJEEV ANANT SRIVASTAV and ATUL VIJAYKUMAR PATIL, stating that his father was having health problems and, while defendant AKHIL BANSAL remains in India with his father, he appoints defendant SANJEEV ANANT SRIVASTAV as his replacement and, "in case of his absence, the decision powers would be given to Atul Patil. . . . I promise that I will not let the business suffer because of my personal problems."

39.    On or about March 13, 2005, defendant SANJEEV ANANT SRIVASTAV sent a reply e-mail message to defendant AKHIL BANSAL stating, in part: "please don't worry about here.  I will take the command . . . ."

40.    On or about March 23, 2005, defendant HIMANSHU KULSHRESTHA sent an e-mail message to a customer stating: "we are trying hard for Valium 10 but due to government restrictions on Roche India, it is not available.  Instead we have ordered 1 million tabs of generic diazepam 10 mg tablets . . . ."

All in violation of Title 21, United States Code, Section 846.

-26-

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 42 and 44 through 59, and the overt acts of Count One, are incorporated here.

2.      Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least in or about April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL**
**AKHIL BANSAL**
**JULIE AGARWAL,**
**a/k/a "Jaya,"**
**YATINDRA KUMAR AGARWAL**
**HIMANSHU KULSHRESTHA**
**ATUL VIJAYKUMAR PATIL**
**SANJEEV ANANT SRIVASTAV**
**JITENDRA ARORA,**
**a/k/a "Jitu,"**
**KEVIN ATKINSON**
**VICTOR DEVORE**
**TOM PETERS**
**MATTHEW JOSEPH MELAO**
**CHRISTOPHER GEOFF LAINE**
**WILLIAM RANDALL REED,**
**a/k/a "millerlight," and**
**RICHARD DABNEY**

conspired and agreed together, and with others known and unknown to the grand jury, to knowingly and intentionally import into the customs territory of the United States, from a place outside thereof, that is, India, Schedule II, III and IV controlled substances, including but not limited to, quantities of the following controlled substances: (1) codeine, a Schedule II controlled substance; (2) codeine with paracetamol (PWC), a Schedule III controlled substance;

(3) ketamine, a Schedule III controlled substance; (4) alprazolam (the generic form of Xanax®), a

Schedule IV controlled substance; (5) clonazepam (the generic form of Klonopin®), a Schedule

IV controlled substance; (6) chlordiazepoxide (the generic form of Librium®), a Schedule IV

controlled substance; (7) dextropropoxyphene (the generic form of Darvon® and Darvocet®), a

Schedule IV controlled substance; (8) diazepam (the generic form of Valium®), a Schedule IV

controlled substance; (9) lorazepam (the generic form of Ativan®), a Schedule IV controlled

substance; (10) modafinil (the generic form of Provigil®), a Schedule IV controlled substance;

(11) nitrazepam (the generic form of Mogadon®) a Schedule IV controlled substance;

(12) pentazocine (the generic form of Talwin®), a Schedule IV controlled substance;

(13) sibutramine hydrochloride (the generic form of Meridia®), a Schedule IV controlled

substance; and (14) zolpidem tartrate (the generic form of Ambien®), a Schedule IV controlled

substance, in violation of Title 21, United States Code, Section 952.

     All in violation of Title 21, United States Code, Section 963.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 42 and 44 through 59, and the overt acts of Count One, are incorporated here.

2.     Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least in or about April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL**
**and**
**AKHIL BANSAL**

engaged in a continuing criminal enterprise in that they:

(a)     violated one or more provisions of subchapter I of Chapter 13 of Title 21, United States Code, which are felonies, and such violations were part of a continuing series of violations of subchapter I of Chapter 13 of Title 21, United States Code, including but not limited to, the offenses contained in Counts One and Two of this indictment, and the Overt Acts listed in this indictment at paragraphs 1 through 40 of Count One of this indictment;

(b)     the series of violations described in paragraph (a) were undertaken in concert with five or more persons, known and unknown to the grand jury, with respect to whom defendants occupied a position of organizer, a supervisory position and a position of management; and

(c)     defendants obtained substantial income and resources from the violations described in paragraphs (a) and (b).

In violation of Title 21, United States Code, Section 848.

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 42 and 44 through 59, and the overt acts of Count One, are incorporated here.

2.    At all times material to this indictment:

(a)    The United States Food and Drug Administration (FDA) was the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 301-397.

(b)    Sildenafil citrate, approved to be sold in the United States only under the trade name Viagra®, was a drug within the meaning of Title 21, United States Code, Section 321(g), and further was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A), in that, due to its toxicity and other potentiality for harmful effect, sildenafil citrate was not safe for use except under the supervision of a practitioner licensed by law to administer such drug.

(c)    Viagra® was also a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(B) because its application, approved by the FDA under Title 21, United States Code, Section 355, limited Viagra® to use under the professional supervision of a properly licensed medical practitioner.

(d)    Viagra®, manufactured by Pfizer, Inc., was the only product containing sidenafil citrate approved by FDA to be distributed in the United States, and was the only sidenafil citrate drug product whose labeling claims had been found by FDA to be supported by adequate and well-controlled studies.

-30-

(e)    A drug was deemed to be misbranded unless its labeling contained adequate directions for use, which was defined by regulation as directions under which a layman can use a drug safely and for the purposes for which it was intended. Title 21, United States Code, Section 352(f); 21 C.F.R. § 201.5.

(f)    Prescription drugs were exempt from the adequate directions for use requirement provided that they were properly dispensed under the supervision of a properly licensed medical practitioner. Title 21, United States Code, Section 353(b)(2).

(g)    There can be no adequate directions for lay use of a prescription drug and therefore prescription drugs dispensed not under the supervision of a properly licensed medical practitioner were misbranded within the meaning of Title 21, United States Code, Section 352(f).

(h)    The act of dispensing prescription drugs without the prescription of a practitioner licensed by law to administer such drug was an act which caused the drug to become misbranded while held for sale. Title 21, United States Code, Section 353(b)(1).

3.    Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL,**
**AKHIL BANSAL**
**JULIE AGARWAL,**
**a/k/a "Jaya,"**
**YATINDRA KUMAR AGARWAL**
**HIMANSHU KULSHRESTHA**
**ATUL VIJAYKUMAR PATIL**
**SANJEEV ANANT SRIVASTAV**

**JITENDRA ARORA,**
**a/k/a "Jitu,"**
**KEVIN ATKINSON**
**VICTOR DEVORE**
**TOM PETERS**
**MATTHEW JOSEPH MELAO and**
**CHRISTOPHER GEOFF LAINE,**

with the intent to defraud and mislead, introduced and caused the introduction and delivery for

introduction into interstate commerce from various locations in India, to various locations in the

United States, including the Eastern District of Pennsylvania, millions of articles of sildenafil

citrate, an unapproved form of Viagra®, which were misbranded in one or more of the following

ways:

      (a)     within the meaning of Title 21, United States Code, Section 352(f) in that

their labeling contained inadequate directions for use;

      (b)     within the meaning of Title 21, United States Code, Sections 353(b)(1)

and 331(k) in that they were dispensed without the prescription of a practitioner licensed

by law to administer such drug; and

      (c)     within the meaning of Title 21, United States Code, Section 352(i)(2) in

that they were sold as an imitation of another drug, that is, Viagra®;

      In violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and

Title 18, United States Code, Section 2.

-32-

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 42 and 44 through 59, and the overt acts of Count One, are incorporated here.

2.     At all times material to this indictment:

(a)     The United States Food and Drug Administration (FDA) was the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 301-397.

(b)     Codeine, a narcotic Schedule II controlled substance; codeine with paracetamol (PWC), a narcotic Schedule III controlled substance; ketamine, a Schedule III controlled substance; alprazolam, a Schedule IV controlled substance; clonazepam, a Schedule IV controlled substance; chlordiazepoxide, a Schedule IV controlled substance; dextropropoxyphene, a Schedule IV controlled substance; diazepam, a Schedule IV controlled substance; lorazepam, a Schedule IV controlled substance; modafinil, a Schedule IV controlled substance; nitrazepam, a Schedule IV controlled substance; pentazocine, a Schedule IV controlled substance; sibutramine hydrochloride, a Schedule IV controlled substance; and zolpidem tartrate, a Schedule IV controlled substance, are all drugs within the meaning of Title 21, United States Code, Section 321(g), and further were prescription drugs within the meaning of Title 21, United States Code, Section 353(b)(1)(A), in that, due to their toxicity, potential for abuse, and other potentiality for harmful effect, they were not safe for use except under the supervision of a practitioner licensed by law to administer such drug.

-33-

3. Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least in or about April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

**BRIJ BHUSHAN BANSAL
AKHIL BANSAL
JULIE AGARWAL,
a/k/a "Jaya,"
YATINDRA KUMAR AGARWAL
HIMANSHU KULSHRESTHA
ATUL VIJAYKUMAR PATIL
SANJEEV ANANT SRIVASTAV
JITENDRA ARORA,
a/k/a "Jitu,"
KEVIN ATKINSON
VICTOR DEVORE
TOM PETERS
MATTHEW JOSEPH MELAO
CHRISTOPHER GEOFF LAINE
WILLIAM RANDALL REED,
a/k/a "millerlight,"**

with the intent to defraud and mislead, introduced and caused the introduction and delivery for introduction into interstate commerce from various locations in India, to various locations in the United States, including the Eastern District of Pennsylvania, millions of prescription drug products containing codeine, a narcotic Schedule II controlled substance; codeine with paracetamol (PWC), a narcotic Schedule III controlled substance; ketamine, a Schedule III controlled substance; alprazolam, a Schedule IV controlled substance; clonazepam, a Schedule IV controlled substance; chlordiazepoxide, a Schedule IV controlled substance; dextropropoxyphene, a Schedule IV controlled substance; diazepam, a Schedule IV controlled substance; lorazepam, a Schedule IV controlled substance; modafinil, a Schedule IV controlled substance; nitrazepam, a Schedule IV controlled substance; pentazocine, a Schedule IV

-34-

controlled substance; sibutramine hydrochloride, a Schedule IV controlled substance; and

zolpidem tartrate, a Schedule IV controlled substance, which drugs were misbranded within the

meaning of Title 21, United States Code, Section 353(b)(1) in that the drugs were dispensed

without a prescription as required by law.

All in violation of Title 21, United States Code, Sections 331(a), 353(b)(1) and

333(a)(2), and Title 18, United States Code, Section 2.

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 42 of Count One are incorporated here, with the addition of the following defendants:

(a)      Defendant KELLY ANN COUCHMAN was associated with the website *www.myemeds.com*.  Defendant KELLY ANN COUCHMAN received payments from a company which is known to process credit card payments for internet pharmacy websites and then caused payments to be made to the Bansal organization for controlled substance pharmaceutical drugs shipped by the Bansal organization to customers of *www.myemeds.com*.

(b)      Defendant ROHN WALLACE was the owner and operator of a business that operated various websites through which defendants distributed and dispensed controlled substances.  Some of these websites included *www.usarxpress.com* and *www.discountmedsonline.com*.  Defendant ROHN WALLACE received orders from these websites, forwarded the orders to the Bansal organization, distributed, dispensed, and caused to be distributed and dispensed, to consumers in the United States, millions of dosage units of controlled substance pharmaceutical drugs, in Schedules, II, III and IV, as well as millions of dosage units of non-controlled prescriptions drugs, and laundered the proceeds therefrom.

2.      Beginning in or before July 2003, the exact date being unknown to the grand jury, and continuing until at least in or about April 2005, in the Eastern District of Pennsylvania and elsewhere, defendants

-36-

**BRIJ BHUSHAN BANSAL
AKHIL BANSAL
ATUL VIJAYKUMAR PATIL
SANJEEV ANANT SRIVASTAV
JITENDRA ARORA,
a/k/a "Jitu,"
KEVIN ATKINSON
VICTOR DEVORE
TOM PETERS
KELLY ANN COUCHMAN
MATTHEW JOSEPH MELAO,
CHRISTOPHER GEOFF LAINE, and
ROHN WALLACE**

conspired and agreed, together and with others known and unknown to the grand jury:

(a)     To conduct financial transactions affecting interstate and foreign

commerce which involved the proceeds of specified unlawful activity; that is, the

distribution of, and conspiracy to distribute, controlled substances, in violation of Title

21, United States Code, Sections 841(a)(1) and 846; and the use of a facility in interstate

and foreign commerce to promote an unlawful activity, in violation of Title 18, United

States Code, Section 1952(a)(3), knowing that property involved in the financial

transactions represented the proceeds of some form of unlawful activity, and knowing

that the transactions were intended to promote the carrying on of such specified unlawful

activity; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)     To transport, transmit, and transfer, and attempt to transport, transmit and

transfer funds from a place in the United States to and through a place outside the United

States, and to a place in the United States from and through a place outside the United

States, with the intent of promoting the carrying on of specified unlawful activity; that is,

the distribution of, and conspiracy to distribute, controlled substances, in violation of

-37-

Title 21, United States Code, Sections 841(a)(1) and 846; and the use of a facility in interstate and foreign commerce to promote an unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3); in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(c)     To knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity; that is, the distribution of, and conspiracy to distribute, controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and the use of a facility in interstate and foreign commerce to promote an unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3); in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that:

3.     Defendants JITENDRA ARORA, TOM PETERS, KELLY ANN COUCHMAN, ROHN WALLACE, VICTOR DEVORE, MATTHEW JOSEPH MELAO, CHRISTOPHER GEOFF LAINE, and KEVIN ATKINSON (collectively referred to in this count as the "website operator defendants"), operated internet website facilities, and entered into agreements with others operating such websites, offering controlled substance pharmaceuticals for sale, and entered into agreements with credit card processing companies and other individuals and entities, located in the United States and in foreign countries, enabling customers seeking to purchase controlled substance pharmaceutical drugs on the websites to pay for these drugs through credit cards.

-38-

4.      The website operator defendants opened and caused to be opened bank accounts in the United States and offshore in foreign countries to facilitate remittances from credit card processors and others and to facilitate payments to the suppliers of these controlled substance pharmaceutical drugs, that is, defendants AKHIL BANSAL, BRIJ BHUSHAN BANSAL, ATUL VIJAYKUMAR PATIL and SANJEEV ANANT SRIVASTAV (collectively referred to in this count as the "supplier defendants"), on a regular, ongoing basis.

5.      The website operator defendants caused remittances to be made, by international and domestic wire transfers and otherwise, and sometimes through correspondent banks located in New York, Florida and elsewhere, from these credit card processors and other entities on a regular basis, which remittances were based upon customer credit card charges for controlled substance pharmaceutical purchases.

6.      The website operator defendants entered into an agreement with the supplier defendants to illegally ship vast quantities of controlled substance and non-controlled substance pharmaceutical drugs to the customers patronizing the website operator defendants' websites, and communicated regularly with the supplier defendants, by e-mail communication facilities and by telephone, in furtherance of the agreement.

7.      The supplier defendants opened and caused to be opened bank accounts in the United States and offshore in India, the Channel Islands and elsewhere to facilitate the receipt of payments from the website operator defendants, to facilitate the payment of funds to other individuals supplying illegal pharmaceutical drugs to the supplier defendants, to remove the proceeds of their crimes from the United States in order to avoid detection and confiscation by

-39-

law enforcement, and to otherwise facilitate financial and monetary transactions in furtherance of the illegal importation and drug distribution business.

8.      The supplier defendants, after shipping illegal controlled substance pharmaceutical drugs to customers of the website operator defendants, sent and caused to be sent detailed invoices to the website operator defendants by e-mail, provided wire transfer and payment instructions to the website operator defendants, demanded that funds be remitted, and received payments to the supplier defendants' bank accounts in payment for the controlled substance pharmaceutical drugs shipped at the request of the website operator defendants.

9.      The website operators defendants caused domestic and international wire transfers to be made, checks to be executed and otherwise caused funds to be transferred to themselves and others in furtherance of their illegal activities, including transfers made to the supplier defendants in payments for controlled substances.

10.      The supplier defendants made and received payments to and from each other, to domestic and offshore bank accounts maintained in the Channel Islands, India and elsewhere, and made payments to other individuals, in furtherance of their illegal drug importation and distribution organization and to realize the benefit of their illegal activities.

11.      Defendants KELLY ANN COUCHMAN and TOM PETERS engaged in deliberately complex financial transactions designed to hide the nature of their illegal activities and the source of their revenues. These included the receipt of numerous international wire transfers from a credit card processor, the transfer of those funds to other bank accounts, the writing of personal checks drawn on these accounts in order to purchase bank checks made payable to defendant KELLY ANN COUCHMAN, defendant AKHIL BANSAL and other

-40-