IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 05-193 |
| v. : | DATE FILED: 4-6-05 |
| BRIJ BHUSHAN BANSAL : | VIOLATIONS: |
| AKHIL BANSAL : | 21 U.S.C. § 846 (conspiracy to |
| JULIE AGARWAL, : | distribute controlled substances |
|   a/k/a "Jaya," : | – 1 count) |
| YATINDRA KUMAR AGARWAL : | 21 U.S.C. § 963 (conspiracy to |
| HIMANSHU KULSHRESTHA : | import controlled substances – |
| ATUL VIJAYKUMAR PATIL : | 1 count) |
| SANJEEV ANANT SRIVASTAV : | 21 U.S.C. § 848 (continuing |
| JITENDRA ARORA, : | criminal enterprise – 1 count) |
|   a/k/a "Jitu," : | 21 U.S.C. § 331(a) (introduction |
| KEVIN ATKINSON : | of misbranded drugs into |
| VICTOR DEVORE : | interstate commerce – 2 counts) |
| TOM PETERS : | 18 U.S.C. § 1956(h) (conspiracy to |
| KELLY ANN COUCHMAN : | commit money laundering – |
| MATTHEW JOSEPH MELAO : | 1 count) |
| CHRISTOPHER GEOFF LAINE : | 18 U.S.C. § 1956(a)(1) |
| WILLIAM RANDALL REED, : | (promotional money laundering – |
|   a/k/a "millerlight," : | 12 counts) |
| ROHN WALLACE : | 18 U.S.C. § 1956(a)(2) |
| RICHARD DABNEY : | (international money laundering – |
| : | 10 counts) |
| : | 18 U.S.C. § 1957 (transactional |
| : | money laundering – 16 counts) |
| : | 18 U.S.C. § 982 (criminal |
| : | forfeiture) |
| : | 21 U.S.C. § 853 (criminal |
| : | forfeiture) |
| : | 21 U.S.C. § 970 (criminal |
| : | forfeiture) |
| : | 18 U.S.C. § 2 (aiding and abetting) |

<u>INDICTMENT</u>

<u>COUNT ONE</u>

THE GRAND JURY CHARGES THAT:

## Introduction

At all times relevant to this indictment:

## Controlled Substances Act

1. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States. 21 U.S.C. §§ 801-971.

2. Various prescription drugs were scheduled substances under the Controlled Substances Act. There were five schedules of controlled substances – Schedules I, II, III, IV, and V. Drugs were scheduled into these levels based on their potential for abuse, among other things. Abuse of Schedule II drugs may lead to severe psychological or physical dependence. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. Abuse of Schedule IV drugs may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. § 812(b)(2), (3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Codeine, a narcotic, was classified under federal narcotics laws as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(7)

5. Codeine combination products containing less than 90 milligrams per dosage unit, including codeine with acetaminophen and codeine with paracetamol, are narcotics and were classified under federal narcotics laws as Schedule III controlled substances. 21 C.F.R. § 1308.13(e)(1)(ii).

6. Ketamine, a commonly abused depressant, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(c)(6).

7. Alprazolam, a commonly abused depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(1). Xanax®, a prescription drug used to treat anxiety, contained alprazolam, and was therefore classified as a Schedule IV controlled substance.

8. Clonazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(9). Klonopin®, a prescription drug used to treat anxiety, contained clonazepam, and was therefore classified as a Schedule IV controlled substance.

9. Chlordiazepoxide, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(7). Librium®, a prescription drug used to treat anxiety, contained chlordiazepoxide hydrochloride, and was therefore classified as a Schedule IV controlled substance.

10. Dextropropoxyphene, a narcotic, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(b)(2). Darvon® and Darvocet®,

prescription drugs used to treat pain, contained propoxyphene, and were therefore classified as a Schedule IV controlled substances.

11. Diazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(14). Valium®, a prescription drug used to treat anxiety, contained diazepam, and was therefore classified as a Schedule IV controlled substance.

12. Lorazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(27). Ativan®, a prescription drug used to treat anxiety, contained lorazepam, and was therefore classified as a Schedule IV controlled substance.

13. Modafinil, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(7). Provigil®, a prescription drug used to treat narcolepsy, contained modafinil, and was therefore classified as a Schedule IV controlled substance.

14. Nitrazepam, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(36). Mogadon®, a prescription drug used to treat insomnia, contained nitrazepam, and was therefore classified as a Schedule IV controlled substance.

15. Pentazocine, a narcotic analgesic, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(f)(1). Talwin®, a prescription drug used to treat pain, contained pentazocine, and was therefore classified as a Schedule IV controlled substance.

16.    Sibutramine hydrochloride, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(11). Meridia®, a prescription drug used for weight loss, contained sibutramine hydrochloride, and was therefore classified as a Schedule IV controlled substance.

17.    Zolpidem tartrate, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 14(c)(50). Ambien®, a prescription drug used to treat insomnia, contained zolpidem, and was therefore classified as a Schedule IV controlled substance.

### The Federal Food, Drug, and Cosmetic Act

At all times relevant to this indictment:

18.    Under the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. §§ 301-397, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) intended to affect the structure or any function of the body of man. 21 U.S.C. § 321(g)(1)(B) and (C).

19.    Some of the drugs regulated under the FD&C Act were "prescription drugs." "Prescription drugs" were those drugs, which, because of their toxicity or other potential harmful effects, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drugs as a condition of FDA approving any such drug to be placed on the market. 21 U.S.C. § 353(b)(1)(A) and (B).

20. Sildenafil citrate, sold in the United States as Viagra®, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

21. Tadalafil, sold in the United States as Cialis®, and in India as Apcalis, was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

22. Vardenafil, sold in the United States as Levitra®, was indicated for treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

23. Venlafaxine, sold in the United States as Effexor XR® was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

24. Carisoprodol, sold in the United States as Soma®, was indicated for treatment of muscle spasms, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

25. Sertraline, sold in the United States as Zoloft®, was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

26. Tramadol, sold in the United States as Ultram®, was indicated for treatment of pain, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

27. Paroxetine, sold in the United States as Paxil®, was indicated for treatment of depression, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

28. Codeine, codeine combination products (Tylenol III®), ketamine, alprazolam (Xanax®), clonazepam (Klonopin®), chlordiazepoxide (Librium®), dextropropoxyphene (Darvon® and Darvocet®), diazepam (Valium®), lorazepam (Ativan®), modafinil (Provigil®), nitrazepam (Mogadon®), pentazocine (Talwin®), sibutramine hydrochloride (Meridia®), and zolpidem tartrate (Ambien®), described as controlled substances in paragraphs 4-17 above, were also prescription drugs within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

**Defendants**

At all times relevant to this indictment:

29. The defendants, acting together as set forth in detail below, operated an entity herein referred to as the "Bansal organization."

30. Defendant BRIJ BHUSHAN BANSAL was a physician licensed to practice medicine and dispense pharmaceutical drugs in his native India, where he resided at all times material to this indictment. Defendant BRIJ BHUSHAN BANSAL was at no time licensed to practice medicine in the United States, or to prescribe or dispense controlled substances or non-controlled pharmaceutical drugs in the United States. Defendant BRIJ BHUSHAN BANSAL, as the India-based head of the Bansal organization, received orders for pharmaceutical drugs from his customers[1] in the United States and elsewhere, and distributed, dispensed, and

---

[1] As used in this indictment, "customers" refers to the website owners and other individuals who submitted orders to the Bansal organization for shipments of drugs. "Consumers" refers to individuals who placed orders for drugs on the customers' websites.